UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

BOBBY D. DISHMAN,                          )
                                           )
                    Plaintiff,             )
                                           )        No. 4:08-CV-58
v.                                         )
                                           )        *Mattice / Lee*
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
                    Defendant.             )

## REPORT AND RECOMMENDATION

This action was instituted by Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for summary judgment [Doc. 22] and Defendant's motion for summary judgment [Doc. 28].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for summary judgment [Doc. 22] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 28] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**.

## Administrative Proceedings

Plaintiff filed applications for DIB and SSI on August 14, 2002, alleging he became disabled as of March 13, 2002 (Tr. 1163-66). After Plaintiff's applications were denied initially and upon

reconsideration (Tr. 64-75, 76-79, 82-83, 144-58), Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 84). Following a hearing on April 6, 2004 (Tr. 2432-69), the ALJ issued a decision on September 21, 2004 (Tr. 64-75), denying benefits to Plaintiff. On March 27, 2006, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the matter to the ALJ for further administrative consideration (Tr. 92-95). Following a supplemental administrative hearing before a different ALJ on July 13, 2006 (Tr. 2470-2509), the ALJ issued a decision on November 15, 2006, denying benefits to Plaintiff (Tr. 20-31). The ALJ's November 15, 2006 decision became the final decision of the Commissioner on July 11, 2008, when the Appeals Council denied Plaintiff's request for review of the November 2006 decision (Tr. 10-14).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because

2

substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

### How Disability Benefits Are Determined

The Sixth Circuit explains the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with

impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## **ALJ's Findings**

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

4

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2.    The claimant has not engaged in substantial gainful activity since March 13, 2002, the alleged onset date . . . .

3.    The claimant has the following severe impairments: borderline intellectual functioning; positional syncope; and chronic obstructive pulmonary disease (COPD) . . . .

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with no exposure to excessive dust, smoke, fumes, and noxious gases; no frequent overhead motions; no frequent bending or stooping; no excessive vibrations; and no frequent contact with the general public. In addition, he can learn, understand, and carry out no more than simple job instructions.

6.    The claimant is unable to perform any past relevant work . . . .

7.    The claimant was 39 years old on the alleged disability onset date, and is now 43 years old, which is defined as a younger individual . . . .

8.    The claimant has at least a high school education and is able to communicate in English . . . .

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills . . . .

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

11.   The claimant has not been under a "disability," as defined in the Social Security Act, from March 13, 2002 through the date of this decision . . . .

5

(Tr. 25-26, 29-30).

## Issues

The issues presented by Plaintiff are:

1.    Whether the ALJ erred in failing to find Plaintiff's headaches were a severe impairment?

2.    Whether the ALJ erred in failing to comply with the remand order of the Appeals Council of March 27, 2006?

3.    Whether the ALJ erred in evaluating the medical opinions of record?

4.    Whether the ALJ erred in not considering the extent of the Plaintiff's mild mental retardation?

5.    Whether the ALJ erred in failing to follow the correct analysis of listing 12.05(c)?

6.    Whether the ALJ erred in finding Plaintiff's subjective complaints were not fully credible?

7.    Whether the Appeals Counsel erred when it failed to consider new and material evidence?

[Doc. 23].

## Review of Evidence

***Plaintiff's Age, Education, and Past Work Experience***

Plaintiff was 43 years old at the time of the ALJ's November 15, 2006 decision (Tr. 108).

Plaintiff had a twelfth-grade education with some special education classes in high school (Tr. 105,

2437-38).  Plaintiff had past relevant work as a sawyer (saw mill operator), truck mechanic, grave

digger, and molder (Tr. 100, 112-16, 142).

6

*Medical Evidence*

Only the most pertinent information will be briefly mentioned herein as it is not necessary to summarize all of the extensive medical evidence, most of which is not in dispute. Whether or not the medical evidence is summarized herein, however, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

William O'Brien, Psy, D. completed a psychological evaluation for the state agency on December 16, 2002 (Tr. 287-91). Based upon a clinical interview, mental status examination, testing – the Wechlser Adult Intelligence Scale - Third Edition ("WAIS -III") and the Wechsler Memory Scale - Third Edition ("WMS - III"), and a review of Plaintiff's progress notes from CHEER Mental Health/Volunteer Behavioral Health Care System ("VBHCS"), Dr. O'Brien diagnosed Axis I – cognitive order not otherwise specified, Axis II – adjustment disorder with depressed mood and learning disorder not otherwise specified, and Axis III – borderline intellectual functioning[1] (Tr. 290). Dr. O'Brien stated Plaintiff did not appear significantly impaired in his ability to sustain concentration and persistence, remember simple instructions, adapt to changes in a moderate work environment, be aware of normal hazards in the work/household setting, work with others in the work force, maintain basic standards of neatness/cleanliness, travel independently, or manage funds (Tr. 291). Dr. O'Brien stated Plaintiff appeared to have difficulty in remembering verbal information for prolonged periods of time; particularly, if the information were new to

---

[1] Dr. O'Brien found that although Plaintiff obtained a WAIS - III Full Scale IQ score within the extremely low range of functioning, both his adaptive and occupation function argued for functioning within the borderline range. Dr. O'Brien noted that Plaintiff experienced an unspecified head injury in 2000, but he was reportedly able to carry out his work assignments for two years following this injury (Tr. 290).

Plaintiff (*id.*). Dr. O'Brien stated Plaintiff appeared to be able to follow verbal instructions which were repetitive in nature (*id.*).

Rebecca Hansmann, Psy. D., completed a psychiatric review technique form ("PRTF") for the state agency on January 21, 2003 (Tr. 292-305). Dr. Hansmann indicated the categories addressed in the PRTF were organic mental disorders – corresponding to listing 12.02; affective disorders – corresponding to listing 12.04; and mental retardation – corresponding to listing 12.05 (Tr. 292). With regard to organic mental disorders, Dr. Hansmann found Plaintiff had a mentally determinable mental impairment which did not precisely satisfy the diagnostic or "A" criteria of listing 12.02 (Tr. 293). With regard to affective disorders, Dr. Hansmann indicated Plaintiff had a medically determinable impairment – adjustment disorder with depressed mood – which did not precisely satisfy the diagnostic or "A" criteria of listing 12.04 (Tr. 295). Similarly with regard to mental retardation, Dr. Hansmann indicated Plaintiff had a medically determinable impairment – estimated borderline intellectual functioning – which did not satisfy the diagnostic or "A" criteria of listing 12.05 (Tr. 296). With regard to the "B" criteria of listings 12.02, 12.04 and 12.05, Dr. Hansmann concluded Plaintiff had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and had experienced no episodes of decompensation of extended duration (Tr. 302). Dr. Hansmann also stated the evidence did not establish the presence of the "C" criteria for listing 12.02 or listing 12.04 (Tr. 303).

Dr. Hansmann also completed an assessment of Plaintiff's mental residual functional capacity ("RFC") for the state agency on January 21, 2003 (Tr. 306-08). Dr. Hansmann indicated Plaintiff was moderately impaired in the ability to understand and remember detailed instructions,

carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goal or make plans independently of others (Tr. 306-07). Dr. Hansmann rated Plaintiff as not significantly limited in all other areas of his mental functioning (*id.*).

James N. Moore, M.D., completed an assessment of Plaintiff's physical RFC for the state agency on February 6, 2003 (Tr. 309-16). Dr. Moore indicated Plaintiff had no exertional limitations, no postural limitations, no manipulative limitations, a visual limitation to his far acuity, but no other visual limitations, no communicative limitations, and the only environmental limitation identified was that Plaintiff should avoid even moderate exposure to hazards such as heights or moving machinery (*id.*).

Frank Kupstas, Ph. D., completed a PRTF for the state agency on May 8, 2003 (Tr. 317-29). Dr. Kupstas indicated the categories addressed in the PRTF were organic mental disorders corresponding to listing 12.02 and affective disorders corresponding to listing 12.04 (Tr. 317). With regard to organic mental disorders, Dr. Kupstas indicated Plaintiff had a medically determinable impairment which did not satisfy the diagnostic or "A" criteria of the listing (Tr. 318). Similarly with regard to affective disorders, Dr. Kupstas indicated Plaintiff had a medically determinable adjustment disorder which did not satisfy the diagnostic or "A" criteria of the listing (Tr. 320). With regard to the "B" criteria of listing 12.02 and 12.04, Dr. Kupstas indicated Plaintiff had a mild

9

restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation of extended duration (Tr. 327).

Dr. Kupstas also completed an assessment of Plaintiff's mental RFC for the state agency on May 9, 2003 (Tr. 434-37). Dr. Kupstas indicated Plaintiff was moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting (Tr. 434-35). Dr. Kupstas rated Plaintiff as not significantly limited in all other areas of his mental functioning (*id.*).

Rosalia Dominguez, M.D., at VBHCS, completed a progress note concerning Plaintiff on January 29, 2003 (Tr. 357-59). Dr. Dominguez's diagnosis was: Axis I – major depressive disorder, recurrent, severe without psychotic features; Axis II – deferred; Axis IV – psychosocial and environmental problems, severe; and Axis V – current global assessment of functioning score ("GAF") 55, highest GAF in past six months 55, and lowest GAF in past six months 45 (Tr. 359).

Glenn Webb, M.D., a physician at VBHCS completed a progress note concerning Plaintiff on September 19, 2003 (Tr. 591). Dr. Webb's diagnosis was: Axis I – major depressive disorder, recurrent, severe without psychotic features; Axis II – deferred; Axis IV – minimal; and Axis V –

10

highest GAF in last 12 months equals 65 (*id.*).[2]

One of Plaintiff's treating physicians, Joseph Caten, M.D., completed a physical capacities evaluation of Plaintiff on March 20, 2004 (Tr. 1161-62). Dr. Caten indicated Plaintiff could sit for less than one hour at a time and stand/walk for less than two hours at a time (Tr. 1161). He also indicated Plaintiff could sit for less than three hours total in an eight-hour workday and stand/walk for less than four hours total out of an eight-hour workday (*id.*). Dr. Caten found Plaintiff could use his right hand for simple grasping, pushing and pulling, and fine manipulation, could not use his left hand for simple grasping, but could use his left hand for pushing and pulling and fine manipulation (*id.*). He indicated Plaintiff could use his feet and/or legs for repetitive movements, such as operating foot controls (*id.*). Dr. Caten also indicated Plaintiff could occasionally lift up to nine pounds and rarely lift ten to 19 pounds (*id.*). He further indicated Plaintiff could frequently carry up to nine pounds, occasionally carry ten to 19 pounds, and rarely carry 20 to 49 pounds (Tr. 1162). In addition, Dr. Caten indicated Plaintiff should never bend, squat, crawl, climb, or reach above his shoulders (*id.*). Finally, Dr. Caten indicated Plaintiff had a moderate restriction in his ability to drive automotive equipment and a mild restriction of activities involving: (1) exposure to marked changes in temperature and humidity and (2) exposure to dust, fumes, and gases (*id.*).

Progress notes from Eric Lang, M.D., appear in the record (Tr. 1402, 1406, 1412). A pulmonary function study/six-minute walk test was conducted by Dr. Lang on May 15, 2006 (Tr. 1403-1405). Dr. Lang stated Plaintiff had a mild obstructive lung defect and a mild decrease in

---

[2] Numerous other treatment notes from VBHCS appear in the record. Although not summarized explicitly here, treatment notes from Vanderbilt University Medical Center, Baptist DeKalb Hospital and River Park Hospital also appear in the record. As noted above, although not explicitly summarized for the sake of clarity and conciseness, all of these records have been reviewed as part of this report and recommendation.

11

diffusing capacity (Tr. 1405). Dr. Lang commented Plaintiff put forth a moderate effort, but that despite repeated coaching efforts, he felt Plaintiff could have given a stronger effort for more positive results (*id.*).

### Hearing Testimony

It is not necessary to summarize all of the hearing testimony, however, all of the testimony has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

### A.    Plaintiff

At the July 2006 supplemental hearing, Plaintiff testified he completed the twelfth grade and had special training in diesel mechanics and machine operation (Tr. 2473). Plaintiff last regularly worked rebuilding container molds and running drill presses and lathes (Tr. 2474). While Plaintiff was so employed, he had an industrial accident, which injured his head (Tr. 2477). Plaintiff's head injury required nine staples and he had bruising to his brain (*id.*). After his head injury, he became angry and confrontational (Tr. 2478). Plaintiff stated there were times when he was working that he "flew off the handle" and nearly had an altercation with one of his supervisors (Tr. 2478-79). Plaintiff stated he was let go from this position because the medication he was taking made him a high risk around machinery (Tr. 2479). Plaintiff has received counseling/treatment for his anger (*id.*).

Plaintiff also stated he has experienced migraines since his head injury (Tr. 2480). Plaintiff stated when he has a migraine, he experiences severe pain, takes his medication, and has to lie down in a dark room (*id.*). He stated he experiences two to three migraines per week (*id.*). He takes medication, but it does ease the pain of his migraines (Tr. 2481).

12

Plaintiff also has diverticulitis and experiences problems with his colon (Tr. 2482). He has had surgery for his diverticulitis and has been told he may eventually need a colostomy (Tr. 2483). Plaintiff stated about half of his large intestine has been removed (*id.*).

Plaintiff also experiences problems with shortness of breath – he has chronic obstructive pulmonary disease ("COPD") (Tr. 2483). He has an oxygen tank at home and uses a nebulizer (Tr. 2484). Plaintiff estimated he could walk approximately 150 feet before he experienced shortness of breath and had to stop (Tr. 2484-85). Plaintiff has smoked cigarettes for approximately 30 years (Tr. 2485). He used to smoke three packs per day, but had reduced his smoking to one pack per day at the time of the hearing (*id.*).

Plaintiff stated he is unable to stand for any length of time because he experiences swelling in his legs and feet (Tr. 2485-86). He also experiences side effects from the medications he takes (Tr. 2486-87). If he stops taking his medications, his anger returns (Tr. 2487). His medications also cause him problems with his memory and concentration (*id.*). Plaintiff also testified he had been told not to lift any weight greater than 10 or 15 pounds because lifting any greater weight could create a pocket for infection and make his diverticulitis flare up (Tr. 2489).

Plaintiff stated he also has a problem with blockage of the arteries in his neck (Tr. 2490). He has been told to avoid stress and strenuous activities because of this problem (*id.*). Plaintiff also has problems with his eyesight (*id.*). He has prescription glasses with bifocals which help a little (Tr. 2491).

Plaintiff helps his wife with the household chores – taking out the garbage, doing laundry and helping with the dishes (*id.*). During a normal day, Plaintiff walks to the store, helps his wife with the dishes, and walks around outside to get some exercise (Tr. 2492). Plaintiff stated it takes

13

him 30 minutes to an hour to walk the one-half mile to the store (*id.*). His only hobby is collecting Native American artifacts (*id.*). Plaintiff stated he experiences problems with reading and writing (Tr. 2495). He can add, subtract and multiply, but cannot divide (*id.*).

      **B.**     ***Vocational Expert***

      Dr. Julian Nadolsky testified as the vocational expert ("VE") at the July 13, 2006 hearing as follows: He described all of Plaintiff's past relevant work stating all of Plaintiff's past relevant work was performed at the heavy level of exertion and Plaintiff had not acquired any skills transferrable to light or sedentary work (Tr. 2500-01). In response to a hypothetical involving a person with the RFC for a wide range of light work and significant non-exertional impairments resulting in an inability to be exposed to excessive dust, smoke, fumes and noxious gases, the need to avoid frequent contact with the general public, the inability to perform frequent overhead motions, the inability to learn, understand, and carry out more than simple job instructions, the inability to handle excessive vibration, and an inability to perform frequent bending, the VE stated there were jobs a hypothetical individual of Plaintiff's age, education, prior relevant work experience and with the aforementioned restrictions could perform (Tr. 2501-02). Examples of such jobs identified were spring clipper in the furniture manufacturing industry, carwash attendant, cushion stuffer, case packager, assembler of electrical accessories, hardware assembler, and oil filter inspector (Tr. 2502). The VE stated there were about 1,100 such light jobs within a 75-mile radius of McMinnville, Tennessee, and 1,250,000 jobs nationally (*id.*).

      In response to a second hypothetical involving the previously identified non-exertional restrictions and hypothetical individual, but reducing the individual's RFC to sedentary work, the VE also stated there were jobs such hypothetical individual could perform (*id.*). Examples of such

jobs were thermostat inspector, electronic component assembler, electronic components cleaner, hand filer and bottling line attendant (*id.*). The VE stated there were approximately 225 such jobs in the local labor market and 400,000 nationally (Tr. 2502-2503).

The ALJ asked the VE whether an inability to work at heights and around moving and dangerous machinery would impact the number of jobs the hypothetical person could perform. The VE stated an inability to work at heights would not impact the number of jobs, but a need to avoid moving and dangerous machinery would eliminate three to five percent of both sedentary and light jobs (Tr. 2503).

The VE testified employers generally allow a maximum of two absences per month and, if Plaintiff's conditions caused him to be absent more than two days per month, he would be unable to maintain employment (*id.*). The VE also testified employers generally will allow three work breaks per day and if Plaintiff needed to rest or lie down more frequently, he would also be unemployable (Tr. 2503-04). The VE further testified if the ALJ found that Plaintiff needed a sit/stand option, it would have a minimal impact on the jobs he could perform at the sedentary level, but it would preclude Plaintiff from employment in about 65 to 70 percent of light jobs (Tr. 2504-05).

The VE stated if Plaintiff experienced pain ranging from moderately severe to severe, Plaintiff would be unable to work (Tr. 2505). The VE likewise testified if Plaintiff suffered from moderately severe to severe fatigability, Plaintiff "would not be able to hold out for a day-after-day full-time job." (Tr. 2506).

The VE testified if the Plaintiff were restricted to the full extent alleged in his testimony, there would be no jobs existing in significant numbers the Plaintiff could perform on a sustained

15

basis (*id.*).  Finally, when asked, the VE testified his testimony did not conflict with the Dictionary of Occupational Titles ("DOT") "except for the extent that I mentioned at the beginning of my testimony that some of the jobs the way he performed them were greater than, were heavy while their [sic] classified as medium in the [DOT]" (Tr. 2506-07).

## Analysis

### *Severe Impairment*

Plaintiff asserts the ALJ erred in failing to find his migraines were a severe impairment at step two of the sequential evaluation process.  In his decision, the ALJ found Plaintiff "has the following severe impairments: borderline intellectual functioning; positional syncope; and chronic obstructive pulmonary disease . . . ." (Tr. 25).  The ALJ then continued through the remaining steps of the sequential evaluation process and determined at step five that Plaintiff was not disabled.

With regard to Plaintiff's headaches/migraines, the ALJ stated:

> The claimant's residual functional capacity is consistent with the claimant's wide range of self-reported activities and with the overall evidence of record viewed in its entirety.  The medical records show that the only physical complaint that the claimant has consistently sought treatment for during the relevant period has been headaches.  While there is no doubt that the claimant has experienced chronic headaches intermittently, the records indicate that the claimant obtained substantial relief of his headache pain with prescribed treatment, when he was compliant with said treatment.

(Tr. 28) (citations to administrative record omitted).

In *Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006), the plaintiff argued the ALJ erred in not finding his multiple sclerosis was a severe impairment at step two of the sequential evaluation process.  At step two, however, the ALJ found the plaintiff did have a severe combination of impairments and the ALJ continued the sequential evaluation process beyond step

16

two. *Id.* The Sixth Circuit held that because the ALJ ruled in the plaintiff's favor at step two, it need not review the ALJ's conclusion the plaintiff's multiple sclerosis was not a severe impairment at that step. *Id.* The Sixth Circuit stated that even if the ALJ should have found plaintiff's multiple sclerosis was also a severe impairment at step two of the sequential evaluation, the failure to do so "would not be a basis for reversal or remand because the ALJ considered all of [the plaintiff's] alleged limitations throughout the remaining steps of the evaluation process." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). *See also Johnson v. Astrue*, No. 3:07-CV-96, 2008 WL 746686, *2 (E.D. Tenn. Mar. 18, 2008) (because the ALJ found plaintiff had severe impairments and moved on to the remaining steps of the sequential analysis, determination of whether any other of the plaintiff's impairments were severe was not necessary).

In this instance, the ALJ specifically found Plaintiff did have "severe" impairments at step two of the sequential evaluation. Moreover, the ALJ considered Plaintiff's impairments throughout the remainder of the sequential evaluation process to determine Plaintiff's RFC (Tr. 26). Thus, contrary to Plaintiff's assertions, I **FIND** the ALJ did not commit reversible error at step two of the sequential evaluation process.

### *Appeals Council Remand Order*

Plaintiff asserts the ALJ erred in failing to comply with the Appeals Counsel remand order because the ALJ failed to: (1) request a neuropsychological evaluation as recommended by the consulting psychological examiner, Dr. O'Brien; (2) seek clarification of Plaintiff's special education status in high school; and (3) seek any additional evidence concerning Plaintiff's WAIS-III test scores – which may have indicated possible mild mental retardation. In light of these alleged failures, Plaintiff asserts the ALJ failed to develop an adequate record.

In its order remanding the case, the Appeals Council stated that on remand the ALJ would:

> Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a . . . .
>
> Give further consideration to the claimant's maximum [RFC] during the entire period at issue and provide rationale with specific reference to evidence of record . . . . In so doing, evaluate the treating and examining source's opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927, and Social Security Rulings 96-2p and 96-5p, and the non-examining source's opinion in accordance with the provisions of 20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p . . . . [T]he [ALJ] may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments . . . . The [ALJ] may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.
>
> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . .

(Tr. 94).

In *Brown v. Comm'r of Soc. Sec.*, No. 1:08-CV-183, 2009 WL 465708 (W.D. Mich. Feb. 24, 2009), the plaintiff's claim for DIB was denied by an ALJ, but the Appeals Council vacated the ALJ's decision and remanded for further proceedings. *Id.* at *1. Thereafter, a different ALJ held a hearing, reviewed the plaintiff's claim for benefits *de novo*, and entered a decision granting plaintiff's claims in part and denying them in part. *Id.* The Appeals Council denied plaintiff's request for review of the second ALJ's decision. *Id.* The plaintiff sought judicial review in the district court asserting solely that the ALJ erred as a matter of law in failing to properly follow the remand order of the Appeals Council. *Id.* at *4. The district court held it lacked jurisdiction to review plaintiff's claim the ALJ failed to comply with the Appeals Council's order of remand

18

stating:

> the applicable regulations provide that "the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision. By failing to remand the matter a second time, it appears that the Appeals Council considered the [second] ALJ's . . . review to be in compliance with the Council's previous order of remand . . . Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process. *See, e.g., Bass v. Astrue*, No. 1:06-cv-591, 2008 WL 3413299 at *4 (M.D.N.C. Aug. 8, 2008) ("[t]he Court does not review internal agency - level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order").

*Id.* at *6.

Similarly, in *Riddle v. Astrue*, No. 2:06-00004, 2009 WL 804056 (M.D. Tenn. Mar. 25, 2009), the ALJ denied plaintiff's claims for SSI and DIB. *Id.* at *1. The Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings with instructions. *Id.* On remand, the ALJ determined, after a hearing, that the plaintiff was not disabled. *Id.* at *1-3. The Appeals Council denied plaintiff's request for review of the ALJ's second decision. *Id.* at *3. Before the district court, the plaintiff asserted, *inter alia*, that the ALJ erred as a matter of law in failing to comply with the Appeals Council's order of remand. *Id.* at *19. The district court concluded plaintiff's claim lacked merit stating:

> The scope of the district court's review authority is to determine whether the Commissioner's findings of fact are supported by substantial evidence in the record, and whether the correct legal standards were applied. Because the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.

19

*Id.* (citing *Dyer v. Secretary of H.H.S.*, 889 F.2d 682, 684 (6th Cir. 1989); *Duda v. Secretary*, 834 F.2d 554, 555 (6th Cir. 1987); *Kastman v. Barnhart*, No. 01-C-150, 2002 WL 1461499 (N.D. Ill. Jul. 3, 2002)).

Accordingly, I **CONCLUDE** Plaintiff's assertion that the ALJ erred by not properly complying with the Appeals Counsel's remand order fails.[3]

### Listing 12.05(C)/Mental Retardation

Plaintiff asserts the ALJ failed to properly consider whether he satisfied the requirements of Listing 12.05(C) and erred in determining he was not mildly mentally retarded. Plaintiff contends the WAIS-III full scale IQ score of 64 found by Dr. O'Brien in his December 2002 consultative examination is a fair assessment of his current functioning and should be considered valid.

For use at step three, the Commissioner has promulgated an extensive list of impairments. *See generally* 20 C.F.R. Part 404, Subpart P, Appx. 1 (2005). The list includes dozens of conditions, ranging from problems of the musculoskeletal system to skin disorders. *See id.* As a general rule, if the plaintiff has an impairment that matches or is substantially equivalent to a listed impairment, the claimant is disabled *per se*. *Gambill v. Bowen*, 823 F.2d 1009, 1011 (6th Cir. 1987). It is plaintiff's burden to prove her impairments meet or medically equal a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). To do so, a plaintiff must present specific medical findings that his or her impairment meets the applicable listing of impairments or present medical evidence that describes how the impairment is equivalent to a listed impairment. *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); *Land v. Sec'y of Health & Human Servs.,* 814 F.2d 241, 245 (6th Cir. 1986)

---

[3] Further, that the Appeals Council affirmed the second ALJ's decision strongly suggests compliance with the remand order.

(per curiam).

In order to meet the requirements of a listed impairment, a plaintiff must meet all the elements of the listed impairment. *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (per curiam) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of a listing provides substantial evidence to support finding that claimant did not meet the listing)). An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify. *Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 761 (6th Cir. Jul. 27, 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment. *Hale,* 816 F.2d at 1083. It is not sufficient to come close to meeting the requirements of a listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (per curiam) (decision to deny benefits affirmed where medical evidence *almost* establishes a disability under listing). An ALJ should provide a sufficient explanation for his or her step three conclusion when making a disability determination. *See, e.g., Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The purpose of the ALJ's explanation is to facilitate meaningful judicial review of the administrative decision. *See, e.g., Jones*, 364 F.3d at 505; *Scott*, 297 F.3d at 595; *Clifton*, 79 F.3d at 1009.

With regard to the issue of whether Plaintiff satisfied listing 12.05,[4] the ALJ found:

> Section 12.05 defines mental retardation as significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; (i.e., the evidence demonstrates or supports onset of the impairments before age 22). Section 12.05C essentially provides that a claimant will be found disabled if he has a valid IQ score of 60-70 (that was an accurate assessment of his functioning before he attained age 22, and, in addition, has another impairment causing a significant work related limitation of function. The report of Dr. O'Brien shows that, in December 2002, the claimant had the following IQ scores on WAIS-III testing; verbal 69; performance 64; and full scale 64. However, Dr. O'Brien noted that the claimant's work history and educational attainment supported a current diagnosis of borderline intellectual functioning rather than mild mental retardation based on adaptive and

---

[4] Listing 12.05 states:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> Or
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> Or
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> Or
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

22

occupational functioning. The diagnostic impression is consistent with the determinations of designated State agency physicians who also rejected a 12.05 finding, and with the fact that the record shows that Mr. Dishman suffered an on-the-job head injury in 2000, but that he returned to work at a skilled/semiskilled job for two years following that injury.

(Tr. 26).

In *Russell v. Astrue*, No. 2:07-CV-245, 2008 WL 5130103 (E.D. Tenn. December 4, 2008),

this Court stated:

> In order to meet the requirements of Listing 12.05C, the claimant must satisfy the specific requirements of paragraph C as well as the diagnostic description in the introductory paragraph. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (holding that "[a] claimant must demonstrate that her impairment satisfied the diagnostic description for the listed impairment in order to be found disabled thereunder"). Therefore, to establish a claim under Listing 12.05C, a claimant must prove the following: 1) the claimant suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description), 2) the record demonstrates a valid verbal, performance, or full scale IQ of 60 through 70 and 3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007); *See also Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003).

*Id.* at 2. Further, in *Alcorn v. Astrue*, No.CIV.A. 5:07-212-DCR, 2008 WL 1790192 (E.D. Ky. Apr.

18, 2008), the court found:

> the Sixth Circuit has clarified, that . . . "a claimant will meet the listing for mental retardation only 'if [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any of the four sets of criteria.'" *Foster*, 279 F.3d at 354 (alterations and emphasis in original) (quoting 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00(A)); *see also Daniels*, 70 F. App'x at 872 (plaintiff "argues on appeal that Listing 12.05(C) only requires a claimant to provide an I.Q. score of 60-70 and possess an additional limitation, i.e., the diagnostic description in the introductory paragraph of Listing

23

12.05(C) does not impose additional required showings. However, we already have rejected this argument. *See Foster*, 279 F.3d at 354-55.").

*Id.* at *4.

Plaintiff asserts in order to satisfy the requirements of Listing 12.05C, he need only provide an I.Q. score of 60-70 and possess an additional limitation [Doc. 23 at 31-33]. Plaintiff does not assert he has presented evidence that his mental deficiency manifested before age 22. *See Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 873 (a plaintiff cannot satisfy the requirements of Listing 12.05C where plaintiff has not provided the required evidence his mental deficiency manifested before age 22). *Id.* Plaintiff relies on the I.Q. score obtained by Dr. O'Brien on the WAIS-III test he administered during his consultative psychological examination of Plaintiff on December 16, 2002, which was well after Plaintiff reached age 22. Plaintiff does not point to any testing, nor has he submitted any testing prior to age 22, which manifested any mental deficiency.[5]

Plaintiff also misapprehends the findings of the ALJ. In his discussion, the ALJ cited the IQ score obtained by Dr. O'Brien during his December 2002 consulting examination of Plaintiff (Tr. 26). The ALJ noted that despite the WAIS-III full scale IQ score, Plaintiff's adaptive and occupational functioning, including the fact that Plaintiff returned to work at a skilled/semi-skilled job for two years following a significant head injury, placed Plaintiff's intellectual functioning in the borderline range rather than in the mildly mentally retarded range (Tr. 290). The ALJ noted that

---

[5] During the July 13, 2006 hearing, Plaintiff told the ALJ he completed the twelfth grade and took regular classes in school (Tr. 2473). During the April 6, 2004 hearing, Plaintiff testified he went to the twelfth grade, but did not graduate (Tr. 2437). He stated he took regular classes, but did have special education classes at Warren County Senior High School during his last year there (Tr. 2437-38). Plaintiff, who was represented by counsel at both hearings, and during the intervening period, has not submitted any record, including educational records, showing he was diagnosed with a mental deficiency prior to age 22.

Dr. O'Brien's assessment that Plaintiff fell within the borderline range rather than in the mildly mentally retarded range, was consistent with the other evidence of record; namely, the reports of the state agency reviewing physicians, Dr. Hansmann and Kupstas, who also concluded Plaintiff did not meet or equal the requirements of Listing 12.05C, as well as with the fact the record reflected Plaintiff returned to work at a skilled/semi-skilled job for two years after a head injury.

Although Dr. O'Brien did not state the full scale IQ score of 64 on the WAIS-III was invalid, he did state that "[t]he was a nonclinically significant difference between [Plaintiff's] verbal IQ score of 69 . . . and Performance IQ score of 64 . . .; both domains fell below premorbid expectation based on claimant's self-reported academic and occupational history" (Tr. 290). Moreover, despite the full scale WAIS-III IQ score, Dr. O'Brien explicitly diagnosed borderline intellectual functioning, commenting that despite the WAIS-III full scale IQ score, Plaintiff's adaptive and occupational functioning "argue[d] for functioning within the borderline range" (*id.*). As the ALJ noted, Dr. O'Brien's diagnosis of borderline intellectual functioning is consistent with the other evidence of record, including the reports of the state agency reviewing physicians.

Accordingly, I **CONCLUDE** Plaintiff's contentions the ALJ erred in finding he did not meet or equal the requirements of Listing 12.05C and in finding Plaintiff had borderline intellectual functioning, not mild mental retardation, fail and the ALJ's findings in this regard are supported by substantial evidence in the record.

### *Treating Physician Rule*

Plaintiff asserts the ALJ erred in evaluating the medical opinions of record, in particular, the opinions of his treating physician, Dr. Caten. Plaintiff asserts there is no opinion that contradicts Dr. Caten's opinions.

25

The ALJ did not give controlling weight to the opinions of Dr. Caten, stating:

> Dr. Caten opined in an assessment completed March 2004 that the claimant had the following limitations: lifting up to 19 pounds rarely, nine pounds occasionally and no frequent lifting; standing and/or walking about four hours in an eight hour workday for a maximum of two hours at a time; sitting about three hours in an eight hour workday for a maximum of one hour at a time; limited use of the left hand for repetitive grasping; no bending, stooping, squatting, crouching, or climbing; no over the shoulder reaching; mild restriction to temperature and humidity extremes; exposure to pulmonary irritants; and moderately limited driving. Normally, such an opinion would be entitled to great weight. However, this is true only if it is "supported by sufficient clinical findings and are [sic] consistent with the evidence." Dr. Caten's treatment records show treatment primarily for recurrent headaches reasonably expected to cause the degree of limitation indicated by Dr. Caten. Furthermore, the claimant has admittedly engaged in many activities that would be precluded if these limitations were appropriate. In particularly, the claimant had just worked for a month at a job involving medium to heavy exertion less than two months before Dr. Caten completed this assessment, according to his testimony at the prior hearing; the claimant reportedly assisted his wife in performing household chores as previously discussed; Drs. Jamieson and LaLonde each indicated that the claimant could return to work without restrictions; and the claimant testified at the supplemental hearing that he had worked as recently as January 2006 for two weeks, unloading trucks and picking up debris around the building. For these reasons, Dr. Caten's opinion is entitled to little weight.

(Tr. 28-29) (internal citations omitted).

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth

Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. It is well-settled law in the Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating source, the ALJ must apply certain factors in determining what weight to give the opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)). Pursuant to the regulations, the ALJ:

> is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)).

The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i). An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record

evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005); 20 C.F.R. § 404.1527(d)(2)). This reason-giving requirement is "clearly procedural ensuring 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in § 404.1527(d)(2) "exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Id.*; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Contrary to Plaintiff's assertions, the ALJ followed the appropriate steps in deciding not to give controlling weight to the opinions of Dr. Caten. *See Wilson*, 378 F.3d at 544. The ALJ applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations; and he appropriately resolved inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i).

In particular, the ALJ found Dr. Caten's opinions were not entitled to great or controlling weight because the limitations assessed by Dr. Caten were not supported by sufficient clinical findings on which to base such a restrictive assessment. In his memorandum in support of his motion, Plaintiff essentially admits there were no findings in the record supporting Dr. Caten's limitations when he states:

> as a treating physician who saw Claimant numerous times over a period of almost two years prior to the ALJ hearing, Dr. Caten was in a position to evaluate Mr. Dishman's physical abilities based on his treatment and personal observations of Mr. Dishman, even if they

28

were not formally noted in his treatment records.  It would be unusual
for a treating physician's records to state so specifically the various
limitations reported in the evaluation completed by Dr. Caten.

[Doc. 23 at 25-26].

The ALJ did not, however, question the longitudinal nature of Dr. Caten's treatment of

Plaintiff, nor did he discount Dr. Caten's assessment because Dr. Caten's treatment notes failed to

set forth the specific limitations report by Dr. Caten.  Rather, the ALJ found the findings made and

noted by Dr. Caten did not support the degree of limitation opined.  Contrary to Plaintiff's

contention, the ALJ must consider and weigh the evidence of record, including Dr. Caten's treatment

notes.  The ALJ is not required to assume, as Plaintiff asserts, that Dr. Caten made, but did not

record, additional clinical findings which would support the degree of restriction he opined based

merely on the length of the treating relationship.

As the ALJ also noted, approximately two months prior to Dr. Caten's assessment, Plaintiff

worked for a short period to time at a job involving medium to heavy exertion.  During the April

2004 hearing, Plaintiff described this job and stated it involved lifting weights up to 50 or 60 pounds

(Tr. 2445).  The ALJ further noted Plaintiff told Dr. O'Brien he assisted his wife in carrying out

household related tasks, mopping, washing dishes, doing laundry, and straightening out the

household residence (Tr. 289).

The ALJ concluded Plaintiff could perform a reduced range of light work, which involves

occasionally lifting up to 20 pounds and ten pounds frequently.  The ALJ's finding also includes the

ability to perform some sedentary work, which involves lifting or carrying a maximum of ten

pounds.  Had the ALJ fully credited Dr. Caten's opinion, he would have found Plaintiff could not

perform even sedentary work.  The ALJ's conclusion that Dr. Caten's assessment is entitled to little

weight is reasonable and properly explained.

Accordingly, I **CONCLUDE** Plaintiff's assertion the ALJ erred in weighing the medical

opinion evidence of record, particularly the assessment of his Dr. Caten, fails and the ALJ's decision

in this regard is supported by substantial evidence.

*Subjective Complaints/Pain Complaints*

Plaintiff asserts the ALJ erred in assessing his credibility using the two step credibility

determination process, particularly his subjective complaints concerning his headaches and

diverticulitis/colon resection.

With regard to Plaintiff's credibility, the ALJ found:

> the claimant's medically determinable impairments could reasonably
> be expected to produce some of the alleged symptoms, but that the
> claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely credible.
>
> The narrative description of the claimant's medical history, including
> complaints, symptoms, findings, diagnoses, assessments, treatment,
> and response to treatment, will not be repeated from the prior
> decision issued September 21, 2004. Instead, such portions of the
> prior decision are specifically adopted and incorporated by reference.
> The undersigned does not, however, adopt or incorporate any
> previous finding of fact or conclusions of law.
> . . .
> The treatment notes, results of objective diagnostic testing and the
> claimant's self-reported activities, as previously discussed, do not
> support the degree of functional limitation that he alleged; thus, the
> undersigned finds that the claimant is not wholly credible with regard
> to his allegations. For example, the record reflects that the claimant
> was injured in a motorcycle accident two months after he alleged
> being disabled. One would not expect the claimant to be riding a
> motorcycle if he truly had back and neck pain which was so severe
> as to be disabling, as he alleged. He applied for and was hired for
> jobs involving medium to heavy exertion a number of time since he
> alleged being disabled. Admittedly, he did not work at these jobs for
> very long, but there are indications in the record that the short
> duration of such jobs may not have had much, if anything to do with

30

his impairments. He told his case manager in January 2006 that he was "thinking of getting a job now to occupy his mind," and he later indicated that he had been laid off from the job that he acquired.

(Tr. 28-29) (internal citations omitted).[6]

The ALJ concluded Plaintiff's subjective complaints, including pain, were not fully credible. Generally, a claimant's self-reported claims of disabling pain are not, standing alone, sufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a) and 416.929(a). First, such claims must be supported by objective medical evidence (*i.e.*, medical signs and/or laboratory findings) of an underlying medical condition, and second, either (1) the objective medical evidence must confirm the severity of the alleged pain, or (2) the objectively established medical condition must be of such a severity that it can be reasonably expected to produce the alleged pain. *See Felisky v. Bowen*, 35

---

[6] The prior decision states:

> The claimant asserts he suffered an on-the-job head injury in May 2000. He was treated for recurrent headaches and anxiety through 2001. He also complains of blurry/impaired vision . . . In spite of these symptoms he continued to work at a substantial gainful activity level until March 2002. He testified his headaches have continued since the 2000 accident and that they often last 2-3 days. He said he suffers an average of two major headaches per month. He will often lie down in a dark room during migraine episodes. He claimed that medications were generally ineffective in controlling the headaches. . . . He said he occasionally would go to the emergency room for further treatment. It is interesting to note there are only two documented emergency room visits that listed headaches as a significant problem during the period sine March 13, 2002. None of the medical records pertaining to the period since March 13, 2002 substantiates the claimant's assertion of frequent chronic headaches. There [are] certainly references to headaches, but not of similar severity or frequently as that alleged by the claimant. There is nothing in the medical record indicating that his alleged headaches or impaired vision worsened since March 13, 2002.

(Tr. 69) (internal citations omitted).

31

F.3d 1027, 1038-39 (6th Cir. 1994); 20 C.F.R. §§ 404.1529(a) and 416.929(a). However, a plaintiff need not establish objective evidence of the pain itself. *Felisky*, 35 F.3d at 1039.

The intensity and persistence of the claimant's symptoms must be evaluated to determine whether those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1). Relevant evidence for the ALJ's determination includes the claimant's medical history, statements by treating physicians, medications taken, medical treatment other than medication received to relieve pain or other symptoms, methods the claimant has used to relieve pain, precipitating and aggravating factors, daily activities, and statements by the claimant. 20 C.F.R. §§ 404.1529(c) and 416.929(c). Ultimately, it is the functional limitations imposed by a condition, rather than the diagnosis itself, which determines whether an individual is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). "Discounting credibility to a certain degree is appropriate where the ALJ finds contradiction among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

The record reflects the ALJ reasonably considered a variety of relevant factors in assessing the overall nature and severity of the limitations caused by Plaintiff's impairments, symptoms, and complaints of pain, in accordance with the evaluation factors as set forth in SSR 96-7p (Evaluation

32

of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements) and 20 C.F.R. § 404.1529. The ALJ's specific reasons for his findings on credibility are well-grounded and substantial evidence supports his finding the record lacked objective evidence to support the degree of limitation Plaintiff alleged. *See McCoy on behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996) ("Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability.").

Although Plaintiff contends the ALJ failed to properly consider his headaches or diverticulitis, Plaintiff has not identified any medical opinion or assessment concerning these conditions which assessed any functional limitation stemming from either his headaches and/or diverticulitis which was not considered by the ALJ in his decision. It is the functional limitations imposed by a condition, not just a diagnosis of the condition, that determines disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (a claimant diagnosed with dysthymic disorder must nevertheless establish that the condition was disabling); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967) (the fact that a person suffers from a diagnosed disease or ailment is insufficient absent proof the condition is severe enough to be disabling, to warrant an award of benefits).

The ALJ also considered Plaintiff's daily activities, and noted Plaintiff told Dr. O'Brien:

> That a typical day for him involved assisting his spouse in carrying out household related tasks, which included meal preparation, sweeping, mopping, washing dishes, doing laundry, and straightening out the household residence. He said he was able to purchase food and clothing items independently; cared for his personal needs independently; followed current events; and was able to operate a motor vehicle.

33

(Tr. 27-28).

The ALJ further noted Plaintiff was injured in a motorcycle accident two months after he alleged he was disabled – which showed Plaintiff was engaged in an activity – riding a motorcycle – which one would not expect Plaintiff to engage in if he were as limited as he alleged (Tr. 29). The ALJ may consider the Plaintiff's daily activities in determining whether his complaints of disabling pain are credible. *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (per curiam). *See e.g.*, *Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (Daily activities of plaintiff who walks daily, exercises, drives a car, watches television, does dishes and yard work, and shops and visits with friends and neighbors are not consistent with disabling pain). In addition, the ALJ noted Plaintiff's credibility was further undercut because the record reflected that after the date of his alleged disability Plaintiff applied for and worked at jobs at the medium and heavy level of exertion, albeit for short periods of time (*id.*). The ALJ further noted there was some indication in the record the short duration of Plaintiff's employment in these jobs was unrelated to his impairments.

There is evidence of record which supports the ALJ's conclusions. On November 11, 2004, Plaintiff told his counselor at VBHCS he was helping his brother-in-law repossess cars and had been in a lot of dangerous situations (Tr. 1194). On August 24, 2004, Plaintiff also told a counselor at VBHCS he had found a house and was in the process of trying to fix it up (Tr. 1197). On January 28, 2008, Plaintiff told a counselor at VBHCS he was not doing well since getting a job – his food stamps and TennCare were discontinued and he was concerned his rent might be raised (Tr. 602). That same day Plaintiff reported he was upset about his boss at his new job – he stated his boss was on him all the time (*id.*). On February 3, 2004, Plaintiff reported being fired from his job because

34

he was absent (Tr. 603).

Here, the ALJ considered Plaintiff's subjective complaints in light of the voluminous evidence in the record and reasonably concluded his subjective complaints were not fully credible. In light of the voluminous evidence, it is possible another individual might have reviewed the same evidence and come to a different conclusion. However, I **CONCLUDE** the ALJ's finding that Plaintiff's subjective complaints were not fully credible is supported by substantial evidence in the record.

### Additional Evidence

Plaintiff asserts the Appeals Council's failure to consider new and material evidence on appeal constitutes reversible error. Plaintiff asserts he:

> presented voluminous amounts of both new and material evidence to support his request (Exhbits AC-1 - AC -16, Tr. 1414 - Tr. 2431). While some of these over one thousand pages of evidence consists of duplicative reports and records contained in the various medical providers treatment records, the bulk of this evidence reflects the extent of [Plaintiff's] continuing COPD and related pulmonary conditions.

[Doc. 23 at 36].

As noted, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. A list of the additional evidence submitted to the Appeals Counsel subsequent to the ALJ's decision appears in the record and in its Notice of Action, the Appeals Council stated:

> In looking at your case, we considered the additional evidence listed on the enclosed Order of Appeals Council.
>
> We find that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 10-11).

35

When an ALJ renders the final decision of the Commissioner, additional evidence presented after the ALJ's decision should be considered only for purposes of a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). A district court may remand a case to the ALJ to consider additional evidence "only upon a showing that there is (1) new evidence which is (2) material and that (3) there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.§ 405(g); *accord Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Good cause is shown when the claimant gives a valid reason for failing to obtain relevant evidence prior to the hearing. *See Cotton*, 2 F.3d at 696. Additional evidence is material only if the claimant can demonstrate there is a "reasonable probability" that the ALJ would have reached a different conclusion on the issues of disability if he had been presented with the additional evidence. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Additional evidence is new if it was not in existence or available to the claimant at the time of the administrative proceedings. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). The party seeking remand has the burden to show that remand is appropriate. *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Foster*, 279 F.3d at 357.

Contrary to Plaintiff's contention, although the Appeals Council indicated it had considered his "new" evidence, this Court may not do so, except for determining whether a remand is warranted under sentence six of 42 U.S.C. § 405(g). *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton*, 2 F.3d at 695-96). Where the Appeals Council considers new evidence, but declines to review the plaintiff's application for benefits on the merits, the district court cannot consider the new evidence in deciding whether the ALJ's decision should be upheld, modified, or

reversed.  *Id.*  As stated in *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007):

> Only evidence in the record below can be considered when
> determining whether or not the ALJ's opinion was supported by
> substantial evidence . . . .  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d
> 146, 148 (6th Cir.1996) ("[W]here the Appeals Council considers
> new evidence but declines to review a claimant's application . . . on
> the merits, the district court cannot consider that new evidence in
> deciding whether to uphold, modify, or reverse the ALJ's decision.").
> There is no backdoor route to get new evidence considered for the
> first time at the court . . . level; the only method to have new evidence
> considered is to ask for a sentence six remand under 42 U.S.C. §
> 405(g) . . . .

In his memorandum, Plaintiff does not set forth "good cause" for his failure to submit the

voluminous materials, some of which he admits was duplicative to materials already in the record,

to the ALJ.  Plaintiff was represented by his current counsel at the July 13, 2006 supplemental

hearing, and the hearing transcript does not reflect Plaintiff asked for additional time to obtain new

evidence nor did he ask that the administrative record be held open for the submission of additional

evidence.  Further, to the extent a portion of the evidence is duplicative of the evidence in the

administrative record at the time of the ALJ's decision, such evidence is neither new nor material

as there is no reasonable probability the ALJ would have reached a different conclusion based upon

duplicate evidence.

Although the portion of the evidence Plaintiff submitted to the Appeals Council which is

dated after the ALJ's November 15, 2006 decision is new in the sense it was not in existence at the

time of the ALJ's decision, the mere fact the evidence is dated after the ALJ's decision, without

more, is insufficient to establish "good cause" for the failure to submit the evidence to the ALJ.

*Perkins v. Apfel*, 14 F. App'x 593, 598 (6th Cir. 2001).  That a medical test or report is of recent

origin or not performed until after the administrative process "is not enough to meet the good cause

requirement." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). *See also Bowling v. Astrue*, No. CIV.A. 6:07-309-DCR, 2008 WL 1868023, *8 (E.D. Ky. Apr. 24, 2008) (good cause for purposes of a remand not established merely because the doctor's report post-dates the hearing decision).

Out of the more than 1,000 pages of allegedly new evidence, Plaintiff cites in his memorandum to only the following three reports: the December 12, 2006 report of Plaintiff's treating pulmonary physician, Dr. Lang (Tr. 2394) and reports from VBHCS dated February 22, 2007 and February 12, 2008, respectively (Tr. 1477, 2335). Plaintiff asserts this evidence reflects the extent of his continuing COPD and related pulmonary conditions [Doc. 23 at 36]. Plaintiff asserts that his "[s]even hospitalizations, in the twelve months following the ALJ hearing, totaling twenty days in the hospital for COPD related treatment alone . . . should have warranted a review and remand of the ALJ decision, in light of the new and material evidence" [*id.* at 38].

Dr. Lang completed a medical opinion form indicating Plaintiff's sleep apnea and COPD supported his opinions (Tr. 2394). Dr. Lang could not assess Plaintiff's capacity to lift/carry, stand and/or walk, and sit (*id.*). Dr. Lang indicated Plaintiff would not require bedrest during a normal workday (*id.*). Dr. Lang also indicated Plaintiff had problems with stamina and endurance which would require him to rest more than the one 30-minute break and two 15-minute breaks normally allowed during a workday (Tr. 2395). Dr. Lang further indicated Plaintiff could not reasonably be expected to be reliable in attending an eight-hour per day, 40-hour workweek in view of the degree of fatigue he experienced (*id.*). Dr. Lang indicated that due to Plaintiff's sleep apnea, COPD, and prescription medication, it was reasonable to expect he would often experience lapses in concentration or memory on a regular basis to the extent he could not attend a task or be reliable in

38

following instructions (*id.*). Finally, Dr. Lang indicated Plaintiff had a reasonable medical need to be absent from full-time work on a chronic – *i.e.*, more than four times per month – basis (Tr. 2396).

On February 12, 2008, an unidentified individual at VBHCS completed a state form rating Plaintiff's mental functioning (Tr. 1477-79).[7] The rater indicated Plaintiff's: (1) activities of daily living were markedly impaired because Plaintiff was unable to perform his activities of daily living without becoming frustrated; (2) Plaintiff's interpersonal functioning was markedly limited because Plaintiff was easily angered by others; (3) Plaintiff's concentration, task performance and pace were markedly limited because Plaintiff had difficulty with concentration and anxiety when performing simple tasks; and (4) Plaintiff's adaptation to change was markedly limited because Plaintiff had difficulty coping with life since his head injury (Tr. 1477-78). The rater also placed a checkmark on the form indicating that over the preceding year, the Plaintiff's period of severe dysfunction accumulated to a total of six months duration or more (Tr. 1478). The rater further indicated Plaintiff fell within a group of persons with severe and persistent mental illness (Tr. 1479). Finally, the rater indicated Plaintiff's current GAF was 55, his highest GAF during the preceding six month period was 55, and his lowest GAF during the preceding six month period was 51 (*id.*).

On February 22, 2007, the same rater at VBHCS completed the state form assessing Plaintiff's mental capacity for work (Tr. 2333-35). The ratings on the February 22, 2007 assessment form are identical to the ratings on the February 12, 2008 state assessment form discussed above (Tr. 1477-79).

These three reports all post-date the ALJ's decision of November 15, 2006. Dr. Lang's

---

[7] The state assessment form is unsigned and the identity of the person performing the assessment – the "rater" – is not identified, except that the rater's TennCare provider ID number appears on the last page of the form (Tr. 1479).

39

opinion form is dated nearly a month after the ALJ's decision and the two VBHCS reports are dated

nearly three and 15 months, respectively, after the ALJ's decision. Evidence which post-dates the

ALJ's decision does not establish disabling impairments prior to the ALJ's decision. *Washington*

*v. Comm'r of Soc. Sec.*, No. 1:07-CV-230, 2008 WL 4449428, *10 (S.D. Ohio Sep. 30, 2008) (citing

*Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Evidence which

reflects a plaintiff's aggravated or deteriorated condition is not material "because such evidence does

not demonstrate the point in time that the disability . . . began." *Sizemore*, 865 F.2d at 712. Thus,

assuming *arguendo* that these reports are evidence of a deterioration of Plaintiff's condition which

is of a disabling level of severity, the post-dated reports are not material for purposes of a sentence

six remand because they do not address when the disability began.

Accordingly, I **CONCLUDE** Plaintiff has failed to satisfy his burden of showing the

evidence presented for the first time to the Appeals Council warrants a remand for further

administrative consideration pursuant to sentence six of 42 U.S.C. § 405(g).

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in

support of their respective motions, for the reasons stated above I **RECOMMEND**[8]:

(1)     Plaintiff's motion for summary judgment [Doc. 22] be **DENIED**;

---

[8] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(2) Defendant's motion for summary judgment [Doc. 28] be **GRANTED**;

(3) Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4) This action be **DISMISSED**.


       s/Susan K. Lee

       SUSAN K. LEE
       UNITED STATES MAGISTRATE JUDGE